**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAYAN SALIM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOBILE TELESYSTEMS PJSC, ANDREI A. DUBOVSKOV, ALEXEY V. KORNYA, and ANDREY KAMENSKY,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Shayan Salim ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Mobile TeleSystems Public Joint Stock Company ("Mobile TeleSystems PJSC" or "Mobile TeleSystems" or the "Company"), analysts' reports and

1

advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Mobile TeleSystems from March 19, 2014 through March 7, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Mobile TeleSystems purports to provide telecommunication services in Russia, Ukraine, Turkmenistan, and Armenia. The Company is incorporated in the Russian Federation with headquarters in Moscow, Russia. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "MBT."

8. Defendant Andrei S. Dubovskov a/k/a Andrey S. Dubovskov ("Dubovskov") served as the Company's President and Chief Executive Officer ("CEO") from around 2011 until 2018.

9. Defendant Alexey V. Kornya ("Kornya") has served as the Company's CEO since around March 2018. Prior to that, Kornya served as the Company's Vice President and Chief Financial Officer ("CFO") beginning in 2010.

10. Defendant Andrey Kamensky a/k/a Andrey Kamenskiy ("Kamensky") has served as the Company's CFO since around April 2018.

11. Defendants Dubovskov, Kornya, and Kamensky are sometimes referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b)  was directly involved in the day-to-day operations of the Company at the highest levels;

(c)  was privy to confidential proprietary information concerning the Company and its business and operations;

(d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)  approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

16. On March 18, 2014, the Company announced that had "received a voluntary request for documents and information regarding [its] business in Uzbekistan from the United States Securities and Exchange Commission (SEC) regarding investigations into the activities of unaffiliated parties."

4

**Materially False and Misleading Statements**

17. On March 19, 2014, the Company disclosed that "the United States Department of Justice [("DOJ")] also is conducting a parallel investigation . . . related to [Mobile's] former operations in Uzbekistan . . . [which] concerned [Mobile] and not merely the activities of unaffiliated parties."

18. On April 24, 2014, the Company filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2013 (the "2013 20-F"). The 2013 20-F was signed by Defendant Dubovskov. The 2013 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Dubovskov and Kornya attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19. The 2013 20-F gave the misleading impression that the Company would not be able to predict the outcome of the U.S. government's investigations into its Uzbekistan operations, including potential fines or penalties. The 2013 20-F stated, in relevant part:

> ***Investigations into former operations in Uzbekistan***—In March 2014, the Group received requests for the provision of information from the United States Securities and Exchange Commission and the United States Department of Justice relating to an investigation of the Group's former subsidiary in Uzbekistan (Note 4). As the aforementioned US government investigations are at an early stage, the Company cannot predict the outcome of the investigations, including any fines or penalties that may be imposed, and such fines or penalties could be significant.

20. On April 21, 2015, the Company filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2014 (the "2014 20-F"). The 2014 20-F was signed by Defendant Dubovskov. The 2014 20-F contained signed SOX

5

certifications by Defendants Dubovskov and Kornya attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21. The 2014 20-F gave the misleading impression that the Company would not be able to predict the outcome of the U.S. government's investigations into its Uzbekistan operations, including potential fines or penalties. The 2014 20-F stated, in relevant part:

> ***Investigations into former operations in Uzbekistan***—In March 2014, the Group received requests for the provision of information from the United States Securities and Exchange Commission and the United States Department of Justice relating to an investigation of the Group's former subsidiary in Uzbekistan (Note 4). The Company cannot predict the outcome of the investigations, including any fines or penalties that may be imposed, and such fines or penalties could be significant.

22. On April 20, 2016, the Company filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2015 (the "2015 20-F"). The 2015 20-F was signed by Defendant Dubovskov. The 2015 20-F contained signed SOX certifications by Defendants Dubovskov and Kornya attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23. The 2015 20-F gave the misleading impression that the Company would not be able to predict the outcome of the U.S. government's investigations into its Uzbekistan operations, including potential fines or penalties, and that the Company was cooperating with the investigations. The 2015 20-F stated, in relevant part:

> ***Investigations into former operations in Uzbekistan***—In March 2014, the Group received requests for the provision of information from the United States Securities and Exchange Commission ("SEC") and the United States Department of Justice ("DOJ") relating to a currently conducted investigation of the Group's former subsidiary in Uzbekistan.

In July 2015, activities related to the Group's former operations in Uzbekistan have been referenced in a civil forfeiture complaint ("The Complaint"), filed by DOJ in the U.S. District Court, Southern District of New York (Manhattan), directed at certain assets of an unnamed Uzbek government official. The Complaint alleges among other things that MTS and certain other parties made corrupt payments to the unnamed Uzbek official to assist their entering and operating in the Uzbekistan telecommunications market. The Complaint is solely directed towards assets held by the unnamed Uzbek official, and none of MTS's assets are affected by the Complaint.

The Company continues to cooperate with these investigations. The Company cannot predict the outcome of the investigations, including any fines or penalties that may be imposed, and such fines or penalties could be significant.

24. On April 21, 2017, the Company filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 20-F"). The 2016 20-F was signed by Defendant Dubovskov. The 2016 20-F contained signed SOX certifications by Defendants Dubovskov and Kornya attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25. The 2016 20-F gave the misleading impression that the Company would not be able to predict the outcome of the U.S. government's investigations into its Uzbekistan operations, including potential fines or penalties, and that the Company was cooperating with the investigations. The 2016 20-F stated, in relevant part:

> ***Investigations into former operations in Uzbekistan***—In March 2014, the Group received requests for the provision of information from the United States Securities and Exchange Commission ("SEC") and the United States Department of Justice ("DOJ") relating to a currently conducted investigation of the Group's former subsidiary in Uzbekistan.
>
> In 2015, activities related to the Group's former operations in Uzbekistan have been referenced in a civil forfeiture complaints ("The Complaints"), filed by DOJ in the U.S. District Court, Southern District of New York (Manhattan), directed at certain assets of an unnamed Uzbek government official. The Complaints allege among other things that MTS and certain other parties made corrupt payments to the unnamed Uzbek official to assist their entering and operating in the Uzbekistan

7

telecommunications market. The Complaints are solely directed towards assets held by the unnamed Uzbek official, and none of MTS's assets are affected by the Complaints.

The Company continues to cooperate with these investigations. The Company cannot predict the outcome of the investigations, including any fines or penalties that may be imposed, and such fines or penalties could be significant.

26. On April 27, 2018, the Company filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendant Kornya. The 2017 20-F contained signed SOX certifications by Defendants Kornya and Kamensky[] attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

27. The 2017 20-F gave the misleading impression that the Company would not be able to predict the outcome of the U.S. government's investigations into its Uzbekistan operations, including potential fines or penalties, and that the Company was cooperating with the investigations. The 2017 20-F stated, in relevant part:

> ***Investigations into former operations in Uzbekistan***—In March 2014, the Group received requests for the provision of information from the United States Securities and Exchange Commission ("SEC") and the United States Department of Justice ("DOJ") relating to a currently conducted investigation of the Group's former subsidiary in Uzbekistan.
>
> In 2015, activities related to the Group's former operations in Uzbekistan have been referenced in a civil forfeiture complaints ("The Complaints"), filed by DOJ in the U.S. District Court, Southern District of New York (Manhattan), directed at certain assets of an unnamed Uzbek government official. The Complaints allege among other things that MTS and certain other parties made corrupt payments to the unnamed Uzbek official to assist their entering and operating in the Uzbekistan telecommunications market. The Complaints are solely directed towards assets held by the unnamed Uzbek official, and none of MTS's assets are affected by the Complaints.
>
> The Group [i.e., Mobile TeleSystems and subsidiaries] continues to cooperate with these investigations. The Group, the DOJ and the SEC are having discussions

8

about a potential resolution to allegations of non-compliance with the Foreign Corrupt Practices Act (FCPA). However, at this stage, the Group is unable to predict whether or not such discussions will result in a settled resolution to the investigations, the magnitude of any settlement, or whether there will be further developments in the investigations.

28. The statements referenced in ¶¶17-27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Mobile TeleSystems and its subsidiary were involved in a scheme to pay $420 million in bribes in Uzbekistan; (2) consequently, Mobile TeleSystems knew or should have known it would be forced to pay substantial fines to the U.S. government after disclosing in 2014 that the U.S. DOJ and SEC were investigating its Uzbekistan operations; (3) Mobile TeleSystems level of cooperation with the U.S. government and remediation was lacking; (4) due to the aforementioned misconduct, Mobile TeleSystems would be forced to pay approximately $850 million in criminal penalties to the U.S. government; and (5) due to the foregoing, Defendants' public statements were materially false and/or misleading at all relevant times.

**The Truth Emerges**

29. On November 20, 2018, the Company disclosed that it had reserved approximately $840 million USD (RUB 55.8 bln) as the potential liability concerning investigations by the SEC and the DOJ into its former operations in Uzbekistan.

30. On this news, shares of Mobile TeleSystems' stock price fell $0.64 per share or nearly 8% to close at $7.45 per share on November 20, 2018.

31. On March 7, 2019, the DOJ reported that the Company and its subsidiary entered into an agreement to pay $850 million in penalties to the United States to resolve charges arising from its role in a scheme to pay $420 million in bribes in Uzbekistan. The DOJ's press release states, in relevant part:

### Mobile Telesystems Pjsc and Its Uzbek Subsidiary Enter into Resolutions of $850 Million with the Department of Justice for Paying Bribes in Uzbekistan

### Former General Director of MTS's Uzbek Subsidiary and Former Uzbek Official Charged in Bribery and Money Laundering Scheme Totaling Almost $1 Billion

*Moscow-based Mobile TeleSystems PJSC (MTS), the largest mobile telecommunications company in Russia and an issuer of publicly traded securities in the United States, and its wholly owned Uzbek subsidiary, KOLORIT DIZAYN INK LLC (KOLORIT), have entered into resolutions with the Department of Justice and Securities and Exchange Commission (SEC) and agreed to pay a combined total penalty of $850 million to resolve charges arising out of a scheme to pay bribes in Uzbekistan.* In addition, charges were unsealed today against a former Uzbek official who is the daughter of the former president of Uzbekistan and against the former CEO of Uzdunrobita LLC, another MTS subsidiary, for their participation in a bribery and money laundering scheme involving more than $865 million in bribes from MTS, VimpelCom Limited (now VEON) and Telia Company AB (Telia) to the former Uzbek official in order to secure her assistance in entering and maintaining their business operations in Uzbekistan's telecommunications market.

\* \* \*

According to the indictment against Karimova and Akhmedov, in or around the early 2000s, they agreed that Akhmedov would solicit and facilitate corrupt bribe payments from telecommunications companies seeking to enter the Uzbek market. In exchange, Karimova allegedly used her influence over Uzbek authorities to help the telecommunications companies obtain and retain lucrative business opportunities in the Uzbek telecommunications market. In total, Akhmedov conspired with the telecom companies and others to pay Karimova more than $865 million in bribes, and Akhmedov and Karimova conspired with others to launder and conceal those funds to, from and through bank accounts in the United States, in order to promote the ongoing bribery scheme, the indictment alleges.

\* \* \*

MTS entered into a deferred prosecution agreement with the Department of Justice in connection with a criminal information filed yesterday in the Southern District of New York charging the company with one count of conspiracy to violate the anti-bribery and books and records provisions of the FCPA and one count of

10

violating the internal controls provisions of the FCPA. KOLORIT pleaded guilty to a one-count criminal information filed in the Southern District of New York, charging the company with conspiracy to violate the anti-bribery and books and records provisions of the FCPA. Pursuant to its agreement with the department, MTS agreed to pay a total criminal penalty of $850 million to the United States, including a $500,000 criminal fine and $40 million in criminal forfeiture that MTS agreed to pay on behalf of KOLORIT. MTS also agreed to the imposition of an independent compliance monitor for a term of three years and to implement rigorous internal controls and cooperate fully with the Department's ongoing investigation, including its investigation of individuals such as Akhmedov and Karimova. The case against MTS and KOLORIT is assigned to U.S. District Judge J. Paul Oetken of the Southern District of New York.

In related proceedings, MTS reached a settlement with the SEC. Under the terms of its agreement with the SEC, MTS agreed to pay a $100 million civil penalty. Consistent with Coordination of Corporate Resolution Penalties in Parallel and/or Joint Investigations and Proceedings Arising from the Same Misconduct (Justice Manual 1-12.100), the Department of Justice agreed to credit the civil penalty paid to the SEC as part of its agreement with MTS. Thus, the combined total amount of criminal and regulatory penalties paid by MTS and KOLORIT to U.S. authorities will be $850 million.

***According to the companies' admissions, MTS and KOLORIT, through various managers and employees within MTS, MTS's Uzbek subsidiaries Uzdunrobita LLC and KOLORIT, and other affiliated entities, paid approximately $420 million in bribes to Karimova, who had influence over the Uzbek governmental body that regulated the telecom industry. The bribes were paid on multiple occasions between 2004 and 2012 so that MTS could enter the Uzbek market through the acquisition of Uzdunrobita and so that Uzdunrobita could gain valuable telecom assets and continue operating in Uzbekistan. The companies admittedly structured and concealed the bribes through payments to shell companies that members of MTS's and Uzdunrobita's management knew were beneficially owned by Karimova. MTS and Uzdunrobita also acquired KOLORIT, knowing that the price MTS and Uzdunrobita paid was inflated, in order to bribe Karimova in exchange for Uzdunrobita's continuing to operate in Uzbekistan. Uzdunrobita made payments to purported charities and for sponsorships to entities related to Karimova. The Uzbek government expropriated Uzdunrobita in 2012 as a result of MTS's, Uzdunrobita's and KOLORIT's failure to meet Karimova's demands for additional payments.***

***A number of factors contributed to the Department's criminal resolution with the companies, including (1) the companies did not voluntarily disclose; (2) the companies' level of cooperation and remediation was lacking, not proactive; (3) the nature and seriousness of the office, including $420 million in bribes to a high-level Uzbek official; and (4) the mitigating factors present in this case, including that the Uzbek government expropriated the companies'***

11

*telecommunications assets in Uzbekistan, resulting in no realized pecuniary gain to the companies as a result of the misconduct.*

(Emphasis added.)

32. On this news, shares in Mobile TeleSystems' stock fell $0.24 per share or over 3% to close at $7.54 per share on March 7, 2019, damaging investors.

33. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Mobile TeleSystems during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.      Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)      the omissions and misrepresentations were material;

(c)      the Company's securities are traded in efficient markets;

(d)      the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)      the Company traded on the NYSE, and was covered by multiple analysts;

(f)      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)      Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff

and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

47. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

48. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

49. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

50. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

51. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

55. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

57. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.	Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.	Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.	Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 19, 2019                             Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*