**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**SHAYAN SALIM, Individually and on Behalf**
**of All Others Similarly Situated,**

                                          **Plaintiff,**                    **MEMORANDUM**
                                                                       **AND ORDER**

                    **-against-**                                                **19-CV-1589 (AMD)(RLM)**

**MOBILE TELESYSTEMS PJSC et al.,**

                                          **Defendants.**
-------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

## INTRODUCTION

       Currently pending before this Court are competing motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following three movants: (1) Hunnewell Partners (UK) LLP ("Hunnewell") ("Hunnewell Mot."), Electronic Case Filing Docket Entry ("DE") #5; (2) Delane Wanner ("Wanner") ("Wanner Mot."), DE #7; and (3) Boston Retirement Systems ("Boston") ("Boston Mot."), DE #11. On May 21, 2019, the Honorable Ann M. Donnelly entered an order referring movants' competing motions to the undersigned magistrate judge. See Order Referring Motion (May 21, 2019) ("Referral Order"). For the reasons that follow, this Court grants Hunnewell's motion for appointment of lead plaintiff and approval of counsel: Hunnewell is hereby appointed as lead plaintiff and Hunnewell's choice of counsel, The Rosen Law Firm P.A. ("Rosen Law"), is hereby appointed as lead counsel.

## BACKGROUND

       On March 19, 2019, plaintiff Shayan Salim ("Salim") commenced this matter by filing a class action complaint against Mobile TeleSystems PJSC ("MBT") and individual MBT

executives Andrei A. Dubovskov ("Dubovskov"), Alexey V. Kornya ("Kornya"), and Andrey Kamensky ("Kamensky") (collectively, "defendants"). See Complaint (Mar. 19, 2019) ("Compl.") ¶¶ 7-10, DE #1. The Complaint sets forth claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, asserted on behalf of putative class members who purchased or otherwise acquired MBT securities between March 19, 2014 and March 7, 2019 (the "Class Period"). See id. ¶¶ 1-2.

On June 3, 2019, while the movants' May 20, 2019 motions for appointment of lead plaintiff and approval of lead counsel remained pending before this Court, Boston supplemented its motion by filing a notice of non-opposition to the competing motions, acknowledging that Boston did not appear to have the largest financial interest in the litigation, within the meaning of the PSLRA. See Notice of Non-Opposition of the Boston Retirement System to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel (June 3, 2019) ("Boston's Notice of Non-Opposition"), DE #15.[1] On June 5, 2019, Hunnewell filed a notice informing the Court that: (i) the deadline to oppose Hunnewell's motion to appoint lead plaintiff and approve lead counsel closed on June 3, 2019, and (ii) the remaining movant, Wanner, had failed to timely file any opposition to Hunnewell's May 20, 2019 motion prior to this deadline. See Notice of Non-Opposition to Hunnewell's Motion to Appoint Lead Plaintiff and Approve Lead Counsel (June 5, 2019) ("Hunnewell's Notice of Non-Opposition), DE #17. As a result, Hunnewell is the only movant to file an opposition to a competing motion for appointment of

---

[1] In light of Boston's Notice of Non-Opposition, see DE #15, the Court will treat its outstanding motion for appointment of lead plaintiff and approval of lead counsel as withdrawn and therefore moot, and will resolve on the merits only the outstanding motions of the remaining movants, Hunnewell and Wanner.

2

lead plaintiff and approval of lead counsel.  See Memorandum of Law of Hunnewell Partners (UK) LLP in Opposition to Competing Lead Plaintiff Motions (June 3, 2019) ("Hunnewell Mem. In Opp."), DE #16.

## DISCUSSION[2]

**I.     Appointment of Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff in a Securities Exchange Act case.  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to receive the lead plaintiff designation.  See In re Olsten Corp. Secs. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998) ("By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'") (quoting H.R. Rep. No. 104-369 at 32 (1995)).

Procedurally, the law directs the court "to appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (generally known as the "most adequate plaintiff").  15 U.S.C. § 78u-4(a)(3)(B)(i).  Courts follow a two-step process to determine the most adequate plaintiff.  See Altayyar v. Etsy, Inc., No. 15-CV-02785 (ARR) (RER), 2015 WL

---

[2] As a preliminary matter, this Court concludes that an order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation).  See Fed. R. Civ. P. 72(a).  Multiple courts, including one in this District, have concluded that motions to appoint lead plaintiffs and approve lead counsel are nondispositive.  See, e.g., In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849 (NGG)(RER), 2006 WL 3511375, at *2 (E.D.N.Y. Dec. 5, 2006) (deciding that "[t]he parties' nondispositive motions to . . . appoint a lead plaintiff and lead counsel were thus properly addressed by [Magistrate] Judge Reyes"); Roofers' Pension Fund v. Papa, Civ. A. No. 16-2805, 2017 WL 1536222, at *3 (D.N.J. Apr. 27, 2017) (finding that the Magistrate's Order regarding the appointment of a class action lead plaintiff and counsel was nondispositive per Fed. R. Civ. P. 72(a)).

13742418, at *1 (E.D.N.Y. Oct. 22, 2015).  Under the first stage of the inquiry, the PSLRA provides a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption is sufficiently "rebutted."  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Specifically, other class members may rebut a party's presumptive lead status "only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff –

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.[3]

---

[3] Under the PSLRA, a court is required to conduct this two-step analysis even when, as is the case here with respect to Hunnewell, a movant's motion to appoint a lead plaintiff is unopposed.  See City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc., 325 F.Supp.3d 310, 314 (E.D.N.Y. 2018) ("Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff.").  Thus, this Court briefly reviews the statute's application in order to select a lead plaintiff and approve class counsel.

A. **Timely Notification**

The PSLRA requires that, as an initial matter, the plaintiff who files the first action publish notice to the class within twenty (20) days of filing the action, in a widely circulated business-oriented publication or wire service, advising members:

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the proposed class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On March 19, 2019, Rosen Law, as counsel to plaintiff Salim, published, in *Business Wire*, a press release announcing that a securities class action had been filed against the aforementioned defendants. See Ex. C to Memorandum in Support of Motion of Wanner for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Wanner Mem."), DE #9-3. The press release also advised those who wished to serve as lead plaintiff in the purported class action to file the appropriate motion no later than May 20, 2019. See id. No moving party has challenged the adequacy of the March 19, 2019 notice, and the filing of a press release through *Business Wire* is an appropriate means of satisfying the PSLRA's notice requirement. See In re Sequans Commc'ns S.A. Secs. Litig., 289 F.Supp.3d 416, 420 (E.D.N.Y. 2018).

Based upon the March 19, 2019 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of the purported class expired on May 20, 2019. See Ex. C to Wanner Mem., DE #9-3. Accordingly, both of the remaining movants'

motions were timely filed with this Court, as they were filed on May 20, 2019. See Hunnewell Mot., DE #5; Wanner Mot., DE #7.[4]

As there is no objection to the March 19, 2019 notice, and because both remaining movants complied with the PSLRA's 60-day deadline to move to serve as lead plaintiff of the purported class, the Court must now turn to the remaining elements of the initial presumption: which of the two movants has the largest financial interest in the relief sought, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and whether the movant with the largest financial interest satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

**B. Largest Financial Interest**

The PSLRA requires a court to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). However, the PSLRA does not offer any statutory guidance for courts to determine which plaintiff has the largest financial interest. See Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses."). The Second Circuit has adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re* Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997

---

[4] Had movant Boston not filed its Notice of Non-Opposition, see DE #15, its May 20, 2019 motion would likewise be considered timely. See Boston Mot., DE #11.

WL 461036, at *5 (Aug. 11, 1997)). Most crucial to the Court's determination is the fourth factor – the approximate financial loss suffered. See Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

The two remaining movants, in their papers submitted to this Court, primarily focus on the fourth *Olsten* factor – the approximate losses suffered during the Class Period. See Memorandum in Support of Motion of Hunnewell to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel (May 20, 2019) ("Hunnewell Mem.") at 4, DE #6; Wanner Mem. at 6, DE #8. "[T]he losses suffered [are] an appropriate proxy for the movants' overall financial interest in the litigation." In re Blue Apron Holdings, Inc. Secs. Litig., No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017).

Based on the record before the Court, movant Hunnewell is undoubtedly the plaintiff with the largest financial interest. During the class period, Hunnewell is alleged to have suffered losses totaling $13,674,214.35 (using the first-in-first-out, or "FIFO," methodology) or $13,116,339.40 (using the last-in-first-out, or "LIFO," methodology).[5] See Ex. 3 to Hunnewell Mem., DE #6-3. By contrast, the other outstanding movant, Wanner, suffered losses totaling $32,116.07 (using the "LIFO" methodology). See Korsinsky Decl., Ex. B, DE #9-2. Had Boston not filed its July 3, 2019 Notice of Non-Opposition, see DE #15, Hunnewell would still maintain the largest financial interest, as Boston claims to have suffered losses totaling $454,857. See Lieberman Decl., Ex. A, DE #13-1. The Court therefore finds that Hunnewell has, by far, the largest financial interest in the relief sought by the class.

---

[5] Courts in both the Second Circuit and nationwide prefer to use a LIFO calculation when assessing losses, rather than a FIFO methodology. See Bo Young Cha v. Kinross Gold Corp., No. 12-Civ.-1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012).

**C. Satisfying Rule 23**

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citation and quotations omitted). Under the PSLRA, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in order to serve as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Nevertheless, when making a determination as to whether the lead plaintiff satisfies Rule 23 for the purposes of appointing a lead plaintiff in a Securities Exchange Act matter, courts need only consider whether the lead plaintiff's claims are typical and adequate. See In re Olsten Corp., 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."). Moreover, when moving to be appointed as a lead plaintiff, the movant need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23. See In re Fuwei Films Secs. Litig., 247 F.R.D. 432, 439 (S.D.N.Y. 2008) (citation omitted). At this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003) (citation and quotations omitted).

Hunnewell has made a prima facie showing with respect to Rule 23(a)'s typicality requirement. Cases in the Second Circuit have held that the typicality requirement is met where

"each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Hunnewell's claims arise out of the events alleged in the Complaint, including that defendants violated multiple securities laws by making false or misleading statements of material facts and/or omitting to disclose material facts relating to MBT. See Compl. ¶ 28. As no opposition to Hunnewell's motion has been filed with this Court, there appears to be no dispute between the remaining movants that Hunnewell's claims arise out of the same course of events. Thus, Hunnewell, the movant with the largest financial interest in the litigation, has preliminarily demonstrated typicality under Rule 23(a).

Hunnewell has also preliminarily satisfied the adequacy requirement of Rule 23(a). The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citation omitted). Based on Hunnewell's submissions, the Court is satisfied that Hunnewell's retained counsel, Rosen Law, is experienced, competent, and well-qualified to conduct the class action securities litigation at hand. See infra, Part II.B. Hunnewell also maintains a sufficient financial interest in the outcome of the case to vigorously advocate on behalf of the class and, in its papers, asserts that there are no conflicts of interest between Hunnewell and absent class members. See Hunnewell Mem. at 5-6, DE #6. Nothing in the record suggests otherwise.

In view of the aforementioned showings, and in the absence of any opposition papers demonstrating Hunnewell's lack of typicality or adequacy, Hunnewell has satisfied Rule 23(a)'s typicality and adequacy requirements necessary to serve as lead plaintiff.[6]

**D. Rebutting the Statutory Presumption**

With respect to the second stage of the inquiry, neither Wanner nor any other member of the class has raised any opposition to Hunnewell's motion for appointment as lead plaintiff. See Hunnewell's Notice of Non-Opposition at 1, DE #17. Additionally, nothing in the record sufficiently rebuts the presumption that Hunnewell would fairly and adequately protect the interests of the class, nor is there any reason to believe that Hunnewell is subject to any unique defense that would otherwise render it incapable of adequately representing the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the PSLRA's statutory presumption has not been rebutted.[7]

---

[6] "[A]ny finding that Rule 23 requirements have been met at this stage [does] not preclude a later challenge in the context of a Rule 23 class certification motion." Ford v. Voxx Int'l Corp., No. 14-CV-4183 (JS) (AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015).

[7] Although the PSLRA does not explicitly state that a movant's status as an institutional investor should be considered when appointing a lead plaintiff, many courts address this factor in making this determination. See In re Cable & Wireless, PLC, Secs. Litig., 217 F.R.D. 372, 376 (E.D. Va. 2003); Xianglin Shi v. Sina Corp., No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005). The PSLRA's legislative history demonstrates a preference for the appointment of an institutional investor as the lead plaintiff. See H.R. Conf. Rep. 104-369, at 34 (1995).
  Of the three original movants, only Boston addressed the institutional investor issue, and highlighted Boston's status as a sophisticated institutional investor. See [Boston's] Mem. in Supp. (May 20, 2019) at 2-3, DE #12. Since filing its motion, however, Boston, which suffered a loss of $454,857, see id. at 2, 7, has acknowledged that it did not have the largest financial interest in the litigation, and it therefore noted its non-opposition to the competing motions, see Boston's Notice of Non-Opposition, DE #15. Neither of the two remaining movants claims to be an institutional investor; Wanner, an individual, plainly is not, and Hunnewell, a private equity firm, does not address this issue. Nevertheless, Hunnewell's loss of more than $13 million so far exceeds Boston's loss of $454,857 that the latter, an institutional investor, does not oppose Hunnewell's application. Whatever Hunnewell's status, the Court concludes that the presumption that Hunnewell will fairly and adequately represent the interests of the class has not been rebutted. See generally In re Sequans Commc'ns, 289 F.Supp.3d at 422 (institutional investor status is dispositive only where an institutional investor had slightly lower financial losses than that of another potential lead plaintiff).

## II.     Approval of Lead Counsel

The PSLRA also provides courts with the procedure needed to approve lead counsel in putative class actions brought under federal securities laws. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The statute clarifies that "the lead plaintiff's right to select and retain counsel is not absolute – the court retains the power and the duty to supervise counsel selection and counsel retention." City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting In re Luxottica Grp., S.p.A. Secs. Litig., No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)). However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." Rauch v. Vale S.A., 378 F.Supp.3d 198, 211 (E.D.N.Y. 2019) (citation omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (citation and internal quotations omitted). The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of counsel solely "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Hunnewell has selected Rosen Law as lead counsel and seeks this Court's approval of this selection. When approving a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211. Rosen Law has substantial experience litigating securities fraud class actions. Submitted to this Court is the Firm's 47-page resume, providing a detailed description of the educational background and legal experience of more than a dozen attorneys at the Firm. See Ex. 4 to

Hunnewell Mem., DE #6-4.  The Firm's resume also lists numerous securities class action suits in the Eastern District of New York, as well as in other courts across the nation, in which Rosen Law has served as either lead or co-lead counsel.  See id.  Moreover, Hunnewell's papers note that Rosen Law has "been actively researching Movant's and Class Plaintiffs' claims, including initiating this action, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants."  Hunnewell Mem. at 7, DE #6.  Other courts in the Eastern District of New York have concluded that, based on Rosen Law's experience, it is qualified to serve as lead counsel in securities law cases, see In re Blue Apron Holdings, 2017 WL 6403513, at *4; Bensley v. FalconStor Software, Inc., 277 F.R.D. 231, 242 (E.D.N.Y. 2011), and no purported class member has offered any reason why Rosen Law would be ill-equipped to serve as lead counsel.

Accordingly, the Court approves Hunnewell's selection of Rosen Law to serve as lead counsel.

## CONCLUSION

For the reasons set forth above, the undersigned magistrate judge appoints Hunnewell as lead plaintiff and approves Rosen Law as lead counsel.  All other outstanding motions for appointment of lead plaintiff and approval of lead counsel are denied.

**SO ORDERED.**

**Dated:	Brooklyn, New York**
       **September 11, 2019**

/s/    **Roanne L. Mann**
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**